IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| REPUBLIC FRANKLIN INSURANCE COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>ALBEMARLE COUNTY SCHOOL BOARD,<br><br>*Defendant.* | CIVIL ACTION NO. 3:10-CV-00007<br><br><br>MEMORANDUM OPINION<br><br><br>NORMAN K. MOON<br>SENIOR UNITED STATES DISTRICT JUDGE |

Plaintiff insurance company filed this action seeking a declaratory judgment that it does not owe Defendant school board a duty to provide insurance coverage or a defense regarding allegations brought against Defendant in a separate civil suit in this court alleging that Defendant violated the Fair Labor Standards Act ("FLSA").[1] The matter is now before the court on the parties' cross-motions for summary judgment.[2] As I stated on the record at the hearing on the motions, and as further explained herein, Plaintiff is entitled to the requested declaratory judgment because the allegations in the underlying FLSA complaint are not covered under the policy.

---

[1] A district court has jurisdiction, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to determine the scope of insurance coverage concerning an ongoing dispute in another case. *See Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004). Though exercise of this authority is discretionary, a declaratory judgment is appropriate when it would "serve a useful purpose in clarifying and settling the legal relations in issue, and . . . terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937); *see also* 28 U.S.C. § 2201, Fed. R. Civ. P. 57.

[2] I note that Defendant's motion for summary judgment was not timely filed. Under the pretrial order entered on March 16, 2010, Defendant's motion was filed three days after the deadline to file dispositive motions, and also three days after Plaintiff filed its motion. Because Defendant's motion was untimely but not stricken, the briefing period was still open as of the date of the hearing. However, further briefing is unnecessary, as the issues and arguments have been adequately presented.

# I.

Republic Franklin Insurance Company, the Plaintiff in this action, issued an insurance policy (the "policy") to the Defendant, Albemarle County School Board. The policy (titled "SCHOOL DISTRICT AND EDUCATORS LEGAL LIABILITY COVERAGE FORM") contains the following relevant terms and provisions:

**SECTION I – SCHOOL DISTRICT AND EDUCATORS LEGAL LIABILITY COVERAGE**

**1.** **Insuring Agreement.**

    a.    We wll pay for all "loss" resulting from a "claim" for a "wrongful act" to which this insurance applies. We will have the right and duty to defend an "insured" against any "suit" seeking such "loss" even if the allegations of the "suit" are groundless, false, or fraudulent. However, we will have no duty to defend an insured against any "suit" seeking "loss" to which this insurance does not apply. At our discretion, we may investigate any allegation of a "wrongful act" and settle any "claim" or "suit" that may result. . . .

\* \* \*

**SECTION VIII – DEFINITIONS**

1.    "Claim" means a written notice, including service of "suit" or demand for arbitration, received by one or more insureds which alleges a "wrongful act" or asks for money or services.

\* \* \*

5.    **a.**    "Loss" means any amount which an insured is legally obligated to pay as damages or which the "educational institution" may be required and permitted by law to pay as indemnity to an insured for any "claim" to which this insurance applies and shall include judgments and settlements. "Loss" also includes punitive damages where insurable by law.

    **b.**    "Loss" shall not include:

        (1)    Fines or penalties imposed by law;

>
> * * *
>
> (4) Operating costs of your institution such as would be included in your "educational institution's" budget. . . .
>
> * * *
>
> 10. "Wrongful act" means any breach of duty, neglect, error, omission, misstatement, or misleading statement in the discharge of "educational institution" duties.

On January 6, 2010, a number of Defendant's current and former employees filed the underlying complaint in this court, seeking relief pursuant to the FLSA. *See Cieslewitz, et al. v. Albemarle County School Board*, Civil Action No. 3:10-cv-00002. The plaintiffs in the underlying lawsuit[3] are (or were) either bus drivers or "transportation assistants." The underlying claimants contend that, "[f]or many years through to the present, [Defendant] did not pay the representative plaintiffs and collective action members for all hours worked, including premium pay at time and a half . . . for more than 40 hours of work per week, all in violation of" the FLSA. The underlying complaint further alleges that Defendant "knowingly, intentionally, and willfully refused to pay the representative plaintiffs and collective action members for time actually worked and overtime pay. . . ." The plaintiffs in the underlying action seek, *inter alia*, the following relief: a declaratory judgment that Defendant violated the FLSA; an injunction against further violations of the FLSA; "compensatory damages [unpaid wages and overtime] and an equal amount of liquidated damages as provided by the FLSA"; and attorneys fees, as provided by the FLSA.

---

[3] On January 7, 2010, the representative plaintiffs in the underlying action filed a motion for conditional certification of collective action and to facilitate notice. Docket no. 3. Pursuant to the FLSA, other similarly situated bus drivers and transportation assistants may consent to "opt-into" the underlying lawsuit, and the representative plaintiffs sought opt-in certification pursuant to 29 U.S.C. § 216(b). By order (docket no. 14) entered on March 30, 2010, the motion was granted. As of today, a total of 95 plaintiffs are party to the underlying action.

The instant case is an insurance coverage declaratory action arising from *Cieslewitz*, the underlying lawsuit. Plaintiff contends that no coverage exists for the FLSA claim, arguing that the policy does not cover Defendant's pre-existing obligation to pay its debts. I agree. An insured cannot convert a non-covered, pre-existing wage obligation into a covered "wrongful act" through the simple failure or refusal to pay overtime. Additionally, the FLSA claim does not allege "loss" within the meaning of the policy, given that the remedies provided for by the FLSA and sought in the underlying lawsuit do not fall within the policy's definition of "loss," and are restitutionary in nature and do not constitute damages.

## II.

### *A.*

A court may grant a motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that [the moving party] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted).

If both parties have moved for summary judgment – as in the instant case – then a court should consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted). For each motion, "the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

### B.

"A federal court hearing a diversity claim must apply the choice-of-law rules of the state in which it sits." *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005). Here, it is undisputed that Virginia law governs.

"Under Virginia law, an insurer's obligation to defend an action 'depends on comparison of the policy language with the underlying complaint to determine whether any claims alleged [in the complaint] are covered by the policy.'"[4] *America Online, Inc. v. St. Paul Mercury Ins. Co.*, 347 F.3d 89, 93 (4th Cir. 2003) (quoting *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215, 220 (4th Cir. 2003)) (alteration in the original). The insured has the burden to prove coverage, *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th

---

[4] Virginia's "eight corners rule" requires a court to "compare the four corners of the insurance policy against the four corners of the underlying complaint to determine if any allegations may potentially be covered by the policy." *CACI Intern., Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (internal quotation omitted). In other words, I must determine whether "the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." *Penn-America Ins. Co.*, *supra* n. 1, 368 F.3d at 413 (internal quotation omitted).

Cir. 2005), while "the insurer bears the burden of proving that an exclusion applies," *Bohreer v.. Erie Ins. Group*, 475 F. Supp. 2d 578, 585 (E.D. Va.2007).[5]

In Virginia, "an insurance policy is a contract to be construed in accordance with the principles applicable to all contracts." *Seabulk Offshore, Ltd. v. American Home Assur. Co.*, 377 F.3d 408, 419 (4th Cir. 2004). Accordingly, "[u]nder Virginia law, if policy language is clear and unambiguous, we do not apply rules of construction; rather, we give the language its plain and ordinary meaning and enforce the policy as written." *Id*.

## III.

### A.

The policy defines "wrongful act," in relevant part, as "any breach of duty, neglect, error, omission . . . in the discharge of 'educational institution' duties." The crux of the underlying action is that Defendant failed to pay the appropriate wages as required by the FLSA and contract, pursuant to which Defendant's obligation to pay the correct amount of wages arose as soon as the work at issue was performed. Defendant cannot convert this pre-existing obligation to pay wages into a covered "wrongful act" by simply failing or refusing to perform its statutory

---

[5] "The duty to defend is broader than the duty to indemnify because it 'arises whenever the complaint alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy.'" *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005) (quoting *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 189 (1990)); *see also School Board of Newport News v. Commonwealth*, 279 Va. 460, 472 (2010). "[I]f it is doubtful whether the case alleged is covered by the policy, the refusal of the insurer to defend is at its own risk." *Brenner*, 240 Va. at 189 (citing *London Guar. Co. v. White & Bros., Inc.*, 188 Va. 195, 199-200 (1948)); *see also School Board of Newport News*, 279 Va. at 472-73. "And, if it be shown subsequently upon development of the facts that the claim is covered by the policy, the insurer necessarily is liable for breach of its covenant to defend." *Id*. (citing *London Guar. Co.*); *see also School Board of Newport News*, 279 Va. at 472-73. Here, Plaintiff states that it "is defending the School Board under a full and complete reservation of rights." And, with its answer, Defendant filed a counter-claim – not for breach of contract, but for an order declaring, *inter alia*, the following: that "[t]he Policy provides coverage for all of the claims and allegations in the Underlying Action except the prayer for injunctive relief"; that "Republic has a duty to defend the School Board in the Underlying Action"; and that "Republic has a duty to indemnify the School Board for the amount of any judgment entered against it and for any other relief that may be awarded in the Underlying Action."

obligation to properly compensate its employees. *See, e.g., Oktibbeha County Sch. Dist. v. Coregis Ins. Co.*, 173 F. Supp. 2d 541, 543 (N.D. Miss. 2001).[6]

Defendant attempts to overcome this defect by contending that the definition of "wrongful act" includes intentional acts.[7] However, one need not focus on whether the definition of "wrongful act" extends coverage for "intentional" acts. Plaintiff contends that Defendant cannot transform an otherwise uninsured obligation to pay its employees into a covered "wrongful act" by merely failing to pay the wages. In other words, no "wrongful act" caused Defendant's obligation to pay wages to its bus drivers and transportation assistants; rather, the employees' performance in fulfillment of an agreement with Defendant gave rise to the obligation to pay the wages.

---

[6] *Oktibbeha* reasons, in pertinent part, 173 F. Supp. 2d at 543:

> According to the policy, a "'Loss' means Money Damages which the Insured becomes legally obligated to pay by reason of a Wrongful Act." The policy defines "Wrongful Act" as "any act, error or omission of an Insured constituting a breach of a duty imposed by law or a breach of an Employment Contract."
>
> The Court is of the opinion that the school district has not suffered a loss in accordance with the policy. The school district had a duty to pay overtime compensation because of the statutory requirements of the FSLA, not because of any wrongful act or omission of the school district. The school district had a pre-existing obligation to pay these employees for the overtime hours worked, an obligation that was created by the FLSA.
>
> The policy states that coverage will issue only if the school district suffered a loss by reason of a wrongful act. The duty to pay overtime is a matter of statutory law, and the obligation to pay time and a half for every hour worked over a forty hour week arose when the employees worked overtime hours. The amount owed to these employees is not a loss, but rather it is a pre-existing debt or obligation.
>
> Again, the FLSA created the obligation to pay these employees overtime, not any alleged wrongful act. Therefore, the underlying action does not meet the policy definition of loss, and no coverage exists.

[7] This could be construed as an astonishing admission that Defendant "intentionally," and not inadvertently or negligently, refused to pay the correct wages.

Although the definition of "wrongful act" is broad, it is not without limitation and must be read in the context of the entire insuring agreement. *See, e.g., D.C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135-36 (1995) ("No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly."). As other courts have recognized, an insured's negligent, willful, or intentional failure to honor a pre-existing obligation to pay money is not a "wrongful act" as that term is used in the policy. *See, e.g. Noxubee County Sch. Dist. v. United Nat'l Co.*, 883 So. 2d 1159 (Miss. 2004) (the failure to pay overtime pursuant to the FLSA did not constitute a "wrongful act"); *Cleveland Sch. Dist. v. Nat'l Union Fire Ins. Co.*, Civil Action. No. 2:02-cv-65, 2005 WL 2406087 (N.D. Miss. September 27, 2007) (same); *see also Pacific Ins. Co., Ltd. v. Eaton Vance Mgmt.*, 369 F.3d 584 (1st Cir. 2004); *Waste Corp. of America, Inc. v. Genesis Ins. Co.*, 382 F. Supp. 2d 1349 (S.D. Fla. 2005); *Newman v. XL Specialty Ins. Co.*, Civil Action No. 1:06-cv-781, 2007 WL 2982751 (S.D. Ohio September 24, 2007). To find otherwise could encourage parties to routinely circumvent the requirements of the FLSA – whether negligently, willfully, or intentionally – because they have nothing to lose. "[I]t makes no sense to permit a dereliction of duty to transform an uninsured liability into an insured event," *Eaton Vance Mgmt.*, 369 F.3d at 593; such a finding would create a "moral hazard," *May Dept. Stores Co. v. Fed. Ins. Co.*, 305 F.3d 597, 601 (7th Cir. 2002), which cannot be countenanced. *See also Waste Corp. of America*, 382 F. Supp. 2d at 1354-55 (public policy prohibits placing the insured in the "unique posture of voluntarily choosing to do some act for which he knows an insurance company will compensate him even if he chooses wrongly").

### B.

Even if Defendant could meet its burden to establish a "wrongful act" under the policy, the policy defines "loss," in relevant part, as "any amount which an insured is legally obligated to pay as damages." The policy further provides that this definition of "loss" does not include "fines or penalties imposed by law" or the "operating costs of your institution such as would be included in your 'educational institution's' budget. . . ."

The statutory authorization for liquidated damages and attorneys fees is found in 29 U.S.C. § 216. This section is subtitled, "Penalties." As previously observed, the definition of "loss" expressly excludes "penalties imposed by law." *See also Big 5 Corp. v. Gulf Underwriters Ins. Co.*, Civil Action No. 2:02-cv-03320, 2003 WL 22127029 (C.D. Cal. July 14, 2003) (policy's definition of loss expressly excluded "criminal or civil fines or penalties imposed by law," thus FLSA statutory penalties not recoverable under the policy). The statute clearly designates liquidated damages and attorneys fees as "Penalties," and the policy unambiguously excludes such amounts from the definition of "loss."

Additionally, the back wages sought in the underlying lawsuit are not "damages," as covered within the definition of loss, but are merely "operating costs of [the] institution such as would be included in [the] 'educational institution's' budget. . . ." Indeed, Defendant concedes that the policy does not afford coverage for its obligation to pay the back wages.[8] Having made

---

[8] *See* Defendant's brief in support of its summary judgment motion, docket no. 25 at 1:

> Although the School Board initially sought indemnity for backpay in its Answer and Counterclaim, it does not seek that now. Nor does the School Board seek a defense with respect to the Underlying Action's prayers for injunctive relief and declaratory judgment. All it seeks is the indemnity and defense Republic owes for FLSA liquidated damages and attorneys' fees, as well as a defense for plaintiffs' breach of contract claim.

(continued...)

this concession, it attempts to mask the flaws in its defense by arguing that the claims against it are actually three distinct claims that must be analyzed separately – back wages (money that, assuming the truth of the underlying complaint, Defendant owes a pre-existing obligation to pay its bus drivers and transportation assistants), liquidated damages (a penalty under the FLSA), and attorneys fees (a further penalty provided by the FLSA). In other words, Defendant argues that, although the back wages are not subject to coverage, the liquidated damages and attorneys fees associated with its failure to pay those wages are nonetheless covered. This argument must be rejected, as it ignores the provision of the insuring agreement that a covered claim must "result . . . from" a "claim" for a "wrongful act." Here, the liquidated damages and attorneys fees do not exist independently of the allegation that Defendant failed to pay the correct amount of wages. If the failure to pay wages does not constitute a "wrongful act" under the policy, it follows that the statutory remedies allowable in connection with any failure to pay those wages do not result from a claim for a wrongful act. It is inescapable that liability for each of the remedies arises from the same act or event – Defendant's failure to pay the appropriate wages.

Coverage for liquidated damages or an attorneys fee award cannot exist independently of coverage for back pay. I am persuaded by the reasoning in *Big 5*, *supra*, 2003 WL 22127029 at *3, observing that,

> as the . . . Policy does not cover the payments of unpaid overtime wages, the Court is inclined to deny indemnification for attorney's fees on a claim for unpaid overtime wages.
>
> The Court is inclined to find that an award of attorneys' fees cannot exist independent of a damages award. Accordingly, if Defendant . . . has no

---

[8](...continued)
Additionally, Plaintiff asserts that Defendant's Responses to Plaintiff's First Requests for Admission No. 3 indicates that Defendant has admitted that back pay does not fall within the definition of loss.

> responsibility to indemnify Plaintiff . . . for its payment of unpaid overtime wages to the [underlying] plaintiffs, neither should it be required to indemnify Plaintiff . . . for the costs of litigating the [underlying] lawsuit.

Although this particular quote from *Big 5* relates only to an attorneys fees award, the reasoning applies equally to liquidated damages, which, like an attorneys fee award, cannot exist independently of a back pay award. Under the circumstances, it defies reason to extend coverage for liquidated damages, *i.e.*, the statutory doubling of the back wages and overtime, when the back wages and overtime are not subject to coverage.

### C.

Defendant places great stock in a recent opinion of the Supreme Court of Virginia to support its arguments regarding the "wrongful act" and "loss" requirements in the policy. *See School Board of Newport News v. Commonwealth*, 279 Va. 460 (2010). *School Board of Newport News* is inapposite here. The insuring agreement in the policy at issue in *School Board of Newport News* did not include a "wrongful act" trigger. Indeed, the language in the insuring agreement was entirely different and was not even at issue in *School Board of Newport News*. Nothing in *School Board of Newport News* sheds any light on how the Supreme Court of Virginia would interpret the insuring agreement at issue in the instant case.

The facts in *School Board of Newport News* are entirely different from the facts in this case. In *School Board of Newport News*, the school board was alleged to have committed procedural violations that caused the claimant to suffer "a loss of educational opportunity." Here Defendant became indebted to the bus drivers and transportation assistants when the work was performed, and the underlying lawsuit alleges that Defendant never satisfied these debts. In short, *School Board of Newport News* involves completely different allegations and completely different policy language, and offers no guidance for resolving the instant coverage dispute.

Defendant alleges that, in *School Board of Newport News*, the Supreme Court of Virginia rejected the argument that a liability policy does not insure breaches of a pre-existing obligation to pay money.[9] However, *School Board of Newport News* did not address whether the failure to comply with a pre-existing statutory obligation constitutes a "wrongful act" within the meaning of a liability policy. Significantly, a "wrongful act" was not an insuring agreement requirement in the first place, and the court did not engage in any analysis at all of whether the claim fell within the insuring agreement. 289 Va. at 465. Indeed, the insuring agreement at issue in *School Board of Newport News* is entirely different from the insuring agreement at issue here. It provided that the insurer would

> will pay all sums, except as herein limited, on behalf of the [insured] which the [insured] is legally obligated to pay on all claims, either first made or arising from any act occurring during the term of the coverage on causes of action established by law by reason of liability arising out of acts or omissions of any nature while acting in an authorized governmental or proprietary capacity and in the course and scope of employment or authorization.

*Id*. Thus, in *School Board of Newport News*, the court was called upon to address only whether two exclusions applied to bar coverage. *Id*. at 466. The exclusions at issue in *School Board of Newport News* are not at issue here. Therefore, *School Board of Newport News* cannot be read to hold that the failure to comply with a pre-existing contractual or statutory obligation to pay money constitutes a "wrongful act" as that term is used in the policy at issue here.

---

[9] See Defendant's brief in support of its summary judgment motion, docket no. 25 at 1 (*School Board of Newport News* "holds that insurers cannot avoid coverage under a wrongful acts policy, as [Plaintiff] hopes to do, because damages are based on a pre-existing obligation"); *id*. at 8-10 (suggesting that Supreme Court of Virginia "found the equivalent of back pay covered as damages"). *School Board of Newport News* reaches no such conclusion.

Moreover, *School Board of Newport News* did not involve a pre-existing duty to pay money, contrary to Defendant's suggestion.[10] Rather, *School Board of Newport News* involved coverage for an alleged violation of the school board's obligation to provide a "free appropriate education" pursuant to the Individuals with Disabilities Education Act ("IDEA"). In *School Board of Newport News*, the school board had provided the claimant with an education and was being sued for procedural violations that caused the claimant to suffer "a loss of educational opportunity," for which compensation was sought. *Id*. at 463. The insured did not have a pre-existing obligation to place the student in the school chosen by the parents or to otherwise pay money to the parents. Instead, the insured had multiple options at its disposal to comply with the IDEA, including but not limited to procuring additional resources, hiring additional personnel, or paying for an appropriate educational program in a private placement. The insured maintained absolute discretion in determining the most appropriate course of action for compliance with the IDEA. Here, by contrast, the School Board is alleged to have failed to pay wages owed in the first place. Under the FLSA, it is obliged to pay its employees the correct amount of wages for work performed, *i.e.*, the issue in the underlying FLSA case concerns a pre-existing obligation to pay a debt. An insured cannot convert a non-covered obligation to pay money into a "wrongful act" by simply refusing to honor its obligations.

*School Board of Newport News* is only remotely relevant to the "loss" issue presently before me. *School Board of Newport News* involved an *exclusion* for claims in any form "other than monetary damages." Exclusions are strictly construed against the insurer. *St. Paul Fire &*

---

[10] See Defendant's brief in support of its summary judgment motion, docket no. 25 at 9 ("back pay – not liquidated damages or attorneys' fees – is the true equivalent of the private education costs in *School Board of Newport News*").

*Marine Ins. Co. v. Nusbaum*, 227 Va. 407, 411 (1984). In contrast, here the "loss" requirement is found in the insuring agreement. Moreover, *School Board of Newport News* concluded that the underlying remedy awarded against the school board was *not* the equitable remedy of reimbursement, but damages due to the "loss of educational opportunity." The Supreme Court of Virginia explained in *School Board of Newport News* that the trial court had "broad discretion" in fashioning the appropriate relief, and that the trial court had concluded that "damages" was the appropriate relief. 279 Va. at 472. Here, the fact remains that the relief requested in the underlying FLSA action seeks restitution to restore the bus drivers and transportation assistants to the positions they would have occupied had the wages been timely paid. *See, e.g., Big 5*, *supra*, 2003 WL 22127029 at *4.

In sum, *School Board of Newport News* is inapposite and offers no guidance for resolving this dispute.

**IV.**

For the foregoing reasons, and as stated on the record at the hearing on the instant motions, Plaintiff's motion for summary judgment was granted, and Defendant's motion was denied. An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this 23rd day of July, 2010.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE